*289 OPINION OF THE COURT
Guy P. De Phillips, J.
On June 22, 1992, the within juvenile delinquency petition alleging, inter alia, that respondent committed an act on or about June 1, 1992, which would be the crime of robbery in the first degree if committed by an adult, was filed. Upon proof of the respondent’s nonappearance on a Family Court appearance ticket, a warrant was issued on June 22, 1992. On August 16, 1993, some 13 months and 24 days later, respondent was brought in on the warrant to Family Court, appointed a Law Guardian and arraigned. A general denial was entered by the respondent and the proceeding was adjourned for probable cause hearing to August 19, 1993. On August 19, 1993, respondent for the first time moved (orally) to dismiss the petition pursuant to Family Court Act § 320.2 (1). This oral application was denied without prejudice to formal written motion seeking such relief. The probable cause hearing was adjourned on consent to August 23, 1993. On August 23, 1993, respondent through his counsel made formal application to dismiss for failure to hold a "speedy arraignment”. Respondent relies on Matter of Robert S. (192 AD2d 612 [2d Dept 1993]).[1] The presentment agency opposes arguing that the holding in Matter of Robert S. is not retroactive. This court does not reach the issue of retroactivity. The failure to seek dismissal of the petition at arraignment on the initial appearance based on an alleged failure to hold a "speedy initial *290 appearance” constitutes a waiver of such argument. The rationale impelling this conclusion follows together with a plea to the appellate courts to re-examine the issue of "speedy initial appearance” and the implications of Matter of Robert S.
Family Court Act § 320.2 (1) provides: "If the respondent is detained, the initial appearance shall be held no later than seventy-two hours after a petition is filed or the next day the court is in session, whichever is sooner. If the respondent is not detained, the initial appearance shall be held as soon as practicable, and, absent good cause shown, within ten days after a petition is filed.” In analyzing the application of this section, recourse must be had to the interrelationship between arraignment and the other steps in the proceeding including reflection on the policy underlying article 3. Family Court Act § 301.1 states: "The purpose of this article is to establish procedures in accordance with due process of law (a) to determine whether a person is a juvenile delinquent and (b) to issue an appropriate order of disposition for any person who is adjudged a juvenile delinquent. In any proceeding under this article, the court shall consider the needs and best interests of the respondent as well as the need for protection of the community” (emphasis supplied).[2] Rehabilitation of children and the societal good have historically been the focus of our system of juvenile justice. The framework of the proceeding under article 3 embraces statutory precourt practice, preliminary hearings, fact-finding hearings, dispositional hearings and postdispositional hearings. The proceeding is brought by a petitioner, the appropriate presentment agency, against a named respondent. The respondent and the presentment agency are both active participants.
*291 The circumstances giving rise to an article 3 proceeding are the alleged committing by a juvenile of an act which if committed by an adult is a crime with the consequent apprehension of the juvenile for such act by a private person (Family Ct Act § 305.1) or by a peace officer or a police officer (Family Ct Act § 305.2). The juvenile is then either detained and ultimately brought to Family Court or released to the custody of the parent or other person legally responsible for the care of the child (Family Ct Act § 305.2) "upon the issuance in accordance with section 307.1 of a family court appearance ticket to the child and the person to whose custody the child is released.” (Family Ct Act § 305.2 [4] [emphasis supplied].)[3] Obviously where the juvenile is detained by the authorities and brought before Family Court for the initial appearance upon or subsequent to the filing of the petition, in personam jurisdiction over the juvenile is obtained. However, where the juvenile is not detained, but released with the issuance of a Family Court appearance ticket, in personam jurisdiction attaches upon the voluntary appearance by the juvenile. If the juvenile does not honor the obligation imposed by the appearance ticket, in personam jurisdiction does not attach. Family Court Act § 307.1 (1) provides: "A family court appearance ticket is a written notice issued and subscribed by a peace officer or police officer, a probation service director or his designee or the administrator responsible for operating a detention facility or his designee, directing a child and his parent or other person legally responsible for his care to appear, without security, at a designated probation service on a specified return date in connection with the child’s alleged commission of the crime or crimes specified on such appearance ticket” (emphasis supplied).[4] "If a child fails to appear on *292 the return date specified on a family court appearance ticket, the probation service may refer the matter forthwith to the appropriate presentment agency or may, in its discretion, attempt to secure the attendance of the child * * * Efforts to secure the attendance of the child shall not extend beyond seven days subsequent to such return date and the probation service must refer the matter to the appropriate presentment agency within such period. Upon referral, the presentment agency may take whatever action it deems appropriate, including the filing of a petition pursuant to section 311.1” (Family Ct Act § 307.2 [1]).[5] The authority to originate a juvenile delinquency proceeding by the filing of a petition rests solely with the presentment agency (Family Ct Act § 310.1). In order to secure in personam jurisdiction over a nonappearing respondent who has been issued an appearance ticket and defaulted with respect to the obligation to appear as directed, the court after a petition has been filed, may issue a summons or a warrant, as appropriate to secure the initial appearance (Family Ct Act §§ 312.1, 312.2).[6]
It is clear that a warrant may issue to secure in personam jurisdiction over a respondent who refuses to obey a Family Court appearance ticket (Family Ct Act § 312.2 [2]).[7] In order *293 to obtain the warrant, the presentment agency must file the petition and show that the respondent has not obeyed the Family Court appearance ticket. Despite the fact that the court has not obtained in personam jurisdiction over the respondent who has defaulted on the appearance ticket and despite the fact that issuance of a warrant and return of the respondent on the warrant is necessary to effectuate in personam jurisdiction over such respondent and despite the fact that the warrant cannot issue without the petition being filed, Family Court Act § 320.2 states that where the respondent is not detained, "the initial appearance shall be held as soon as practicable, and, absent good cause shown, within ten days after a petition is filed.” Elasticity is built into the timing of the initial appearance by providing that where the respondent is not detained, in personam jurisdiction will obtain upon initial appearance effectuated by return on the warrant. This elasticity is invoked by the phrase "as soon as practicable, and, absent good cause shown, within ten days after a petition is filed”. In personam jurisdiction obtains upon the return on the warrant, voluntary or involuntary. Yet the return on the warrant is beyond the sole control of the presentment agency and cannot be predicted with absolute certitude to occur within 10 days after the petition is filed. Both the presentment agency and the respondent are participants. The respondent and parent or person legally responsible for the respondent’s care has a continuing obligation to honor the Family Court appearance ticket. This obligation is not obviated or lessened by the filing of the petition and issuance of a warrant for the respondent’s arrest and production in court.
Clearly a child who has acted irresponsibly by committing an act which if committed by an adult is a crime should not secure advantage by compounding that irresponsibility with the further irresponsible act of refusing to honor the obligation and commitment imposed by the Family Court appearance ticket. Nevertheless, the holding in Matter of Robert S. (192 AD2d 612 [2d Dept 1993], supra) directly conveys such advantage on the irresponsible respondent by mandating dismissal of the petition for failure by the presentment agency to have the respondent returned on the warrant or show that it *294 could not execute the warrant within 10 days of the filing of the petition. The burden of this holding is placed solely on the presentment agency and nothing is said about the irresponsibility of the respondent. The linchpin of the dismissal is the appellate court’s observation that the respondent urged without objection that he always resided at the address on the petition and since the presentment agency did not execute the warrant within 10 days of the filing of the petition, the warrant does not constitute "good cause” because it "would in no way advance the aims of ensuring a swift and certain determination of the proceeding and supervision of the juvenile” (citing Matter of Randy K., 77 NY2d 398, 404 [1991]). Matter of Randy K. is concerned with a respondent over whom the Family Court had in personam jurisdiction and who therefore was clearly entitled to a speedy trial as mandated by Family Court Act § 310.2 within the specific time constraints of Family Court Act § 340.1 with the specific remedy of failure to afford such speedy trial being dismissal as delineated in Family Court Act § 332.1 (8). With respect to the time limitations governing precourt practice, preliminary hearings, fact-finding hearings, dispositional hearings and post-dispositional hearings, the Legislature, because the speedy fact finding is of singular significance and of constitutional dimension emanating from the Fourteenth Amendment of the United States Constitution, provided for a specific remedy for violation of the time limitation for holding a speedy fact-finding hearing.[8] The Court of Appeals succinctly observed in Matter *295 of Randy K. (supra, at 402): "Section 340.1 is 'a true "speedy trial” provision[.] * * * [B]oth its language and its underlying purpose are directed toward bringing the accused juvenile to trial within [the] specified * * * period * * * [barring] adjournments in the event of "good cause shown” or "special circumstances” ’ (Matter of Frank C., [70 NY2d 408,] at 413-414)”. The legislative intent to treat violation of the time limitation for fact findings different from the time limitation for other stages of the proceeding is clear. Only with respect to failure to hold a speedy fact finding has the Legislature set forth the remedy of dismissal. It is case law which has invoked that remedy at all stages of the article 3 proceeding, resulting in dismissals, not on the merits, with respect to respondents who act irresponsibly, by failing to honor Family Court appearance tickets or scheduled court hearings — a result never intended by the Legislature and clearly at odds with common sense and the policy and objective sought to be implemented under article 3 (see, analysis set forth in Matter of Terrence T., 155 Misc 2d 184). In contrast to a criminal prosecution, juvenile delinquency proceedings are civil in nature, the purpose, in part, being rehabilitation of the child through consideration of the needs and interests of the child *296 (see, Family Ct Act § 301.1; see generally, Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 301.1, at 263-267). The speedy hearing provision furthers this purpose by assuring swift and certain determinations of juvenile delinquency proceedings. Dismissal of a petition as a reward for a respondent who has acted irresponsibly by defaulting on a Family Court appearance ticket for failure of the presentment agency to secure the return of the respondent on an outstanding warrant within 10 days of the filing of the petition, i.e., to secure in personam jurisdiction, does not serve the purpose of rehabilitation of the child through consideration of the needs and interests of the child. Indeed, not only does it not serve the child, it does not serve the need for the protection of the community. Form is exalted over substance.
The time limitation for initial appearance is meaningful and advances the purpose of article 3 only when the court has perfected its jurisdiction, both subject matter and in personam. Since the warrant issued to secure the appearance of a respondent who has defaulted on a Family Court appearance ticket seeks to secure that jurisdiction it clearly constitutes "good cause”. To hold otherwise would place the presentment agency and the court in an untenable situation with regard to advancing the purpose of article 3 and would effectively legislate the purpose clause, Family Court Act § 301.1, out of existence under the guise of judicial pronouncement. It would have the effect of rendering the Family Court appearance ticket illusory as a viable means of gaining in personam jurisdiction over a respondent in an article 3 juvenile delinquency proceeding. Further, it might impel the executive branch of government to resort to detaining children to secure in personam jurisdiction in article 3 proceedings despite the legislative wisdom in permitting discretion in the executive branch, as to the determination of detention or release upon the issuance of a Family Court appearance ticket subsequent to seizure of the child, i.e., arrest in connection with circumstances indicating that the child committed an act which if committed by an adult is a crime. It must be noted that the warrant issued to secure the initial appearance is issued to secure jurisdiction. A warrant issued to secure the appearance of a respondent over whom the Family Court already has obtained in personam jurisdiction is issued for a different purpose. This distinction is not noted in Matter of Robert S. (192 AD2d 612 [2d Dept 1993], supra).
*297 The respondent herein was arraigned at the initial appearance on August 16, 1993 and did not then seek dismissal of the petition for failure to hold a "speedy” initial appearance. The argument that dismissal of the petition is mandated within the purview of Matter of Robert S. (supra) is thereby waived and is academic.
At the initial appearance the respondent is appointed a Law Guardian, advised of his rights, advised of the charge or charges, enters a plea, is released or detained or has the matter referred to probation for adjustment services (Family Ct Act §§ 320.2, 320.3, 320.4, 320.5, 320.6, 321.1, 321.2, 321.3). If the petition is dismissed for failure to secure in personam jurisdiction by rigid and overly strict interpretation of Family Court Act § 320.2, then the child is not answerable to the petition. Not being answerable to the petition, the merits of the petition are not reached and the purpose of article 3 is thwarted. There is no determination whether the child is a juvenile delinquent. There is no appropriate dispositional order. There is no consideration of the needs and best interests of the child. There is no consideration of the need for the protection of the community. There is the conveyance of an impression to the child that the system gives benediction to irresponsibility. The assurance of swift adjudication and safety of the community is "triggered” by the perfecting of the Family Court’s jurisdiction in article 3 proceedings. Until jurisdiction is complete there is nothing to adjudicate-in terms of the merits of the petition. Common sense dictates that it is not the presentment agency’s responsibility to insure that juveniles and their parents or persons otherwise legally responsible meet their personal obligation to appear as directed in the Family Court appearance ticket. The responsibility lies primarily with the juvenile and such parent or person.[9] To excuse nonobservance of that responsibility by dismissing the petition and leaving the juvenile unanswerable to the serious allegation that the juvenile committed an act which if com *298 mitted by an adult is a crime makes a mockery of the social good sought to be obtained by implementation of article 3 and gives vain "lip” service to the need for protection of the community. Indeed, it might well be argued by the presentment agency that the dismissal under these circumstances is not on the merits, is without prejudice, and permits filing a new petition with immediate initial appearance and obtaining of in personam jurisdiction — the respondent now being before the court on the warrant issued on the prior just dismissed petition.
This court has given grave and serious consideration to the implications posed by the holding in Matter of Robert S. (supra). If such holding and the jurisprudential approach to article 3 which it characterizes continues to be binding case law, this court must bend to that binding law. The remedy would then solely be with the Legislature to reflect that the initial appearance is keyed to the perfecting of jurisdiction in the Family Court and that the time limitation set forth in Family Court Act § 320.2 (1) speaks as of the date of that perfection and not before. That perfection is assured when the respondent is detained or when the respondent appears at Family Court on the appearance ticket. In any other circumstance denoting irresponsibility attributable directly to the respondent by the respondent’s wilful nonappearance as, for example, the respondent’s refusal to honor the Family Court appearance ticket or the respondent escaping from detention whether before or after jurisdiction has attached or the respondent absenting himself or herself from a scheduled court appearance the issuances of a warrant to secure the person of the respondent as one answerable to an article 3 petition must serve to toll the time limitations imposed by article 3 or, in the alternative to constitute "good cause”. It is, after all, the irresponsibility of the respondent that caused the issuance of the warrant. The presentment agency is not the respondent’s parent or guardian and, under our system of jurisprudence, is not the guarantor of the respondent’s good behavior. The respondent should and must be held accountable for his or her actions and inactions in the context of the societal and individual good sought to be achieved by implementation of article 3. Patently, where the respondent is not seen to be at fault with respect to the nonappearance, a warrant should not issue. Where the warrant is properly issued, to impose responsibility solely on the presentment agency to secure the appearance of the respondent and to ignore the continuing obligation *299 on the respondent’s part to appear in court does a disservice to the legislative will embraced in article 3, does a disservice to the community and, in essence, does a disservice to the child. If the third branch of government, the judicial, does not teach responsibility, does not reflect responsibility, does not impose responsibility regarding the youth who come before it in juvenile delinquency proceedings, irresponsibility becomes the norm and justice an illusion.[10]
Accordingly respondent’s motion to dismiss the petition on *300 the ground that the initial appearance was not held within 10 days after filing the petition is denied under the circumstances herein and for the reasons stated above.

. In Matter of Robert S. (supra), the respondent was arrested on February 26, 1990, and issued an appearance ticket directing his return to court on March 23, 1990. He failed to appear. On June 15, 1990 the presentment agency filed a juvenile delinquency petition against the 16-year-old respondent. The Family Court issued a warrant for the respondent. Respondent was returned to court on the warrant on August 8, 1991, some 14 months later, for his initial appearance. He sought dismissal of the petition for failure in holding his initial appearance within 10 days after the filing of the petition (see, Family Ct Act § 320.2 [1]). The Appellate Division, Second Department, held that the issuance of the warrant did not constitute "good cause” for the failure to hold the initial appearance within 10 days after filing the petition. Viewing respondent’s allegation that he always resided at the address on the petition with implicit favor, the appellate court placed the burden for initial appearance solely on the presentment agency stating: "[T]he presentment agency did not show that it could not execute the warrant.” (Supra, at 613.) The decision is devoid of any articulation as to the responsibility of the respondent to honor the appearance ticket. Curt in its holding, this decision has enormous implications pertaining to the policy underlying and the effectiveness of article 3 juvenile delinquency proceedings.

. Perusal of the legislative history of article 3 reveals the argument in support as providing "a comprehensive set of procedures for juvenile delinquency proceedings to clarify existing procedures, reflect the increased adversarial and criminal nature of delinquency actions and to ensure swift adjudication and safety of the community” (Budget Report on Bills S-1232-A, Bill Jacket, L 1982, ch 920). Interestingly the Office of Court Administration and the Family Court Advisory and Rules Committee opposed enactment because, inter alia, the "specific time requirements within which certain notices must be given and procedures must take place (e.g. §§ 320.2, 340.1; 350.1) * * * set patently unrealistic time periods which would confront the courts with unrealizable mandates” (letter dated July 20, 1982 from Counsel to the Admin Judge, OCA, to Counsel to the Governor, Bill Jacket, L 1982, ch 920). However specific endorsement was given to, inter alia, "[T]he proposed appearance ticket procedure which would make it more likely that all of the necessary parties to the proceeding will be present at all of its critical stages” (ibid).

. The Sobie, Practice Commentary (McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 305.2, at 300) notes: "The issuance of an appearance ticket replaces the former provision that a child be released upon the 'written promise of a parent to produce the child before the family court’ [former section 724].” While the former promise was made only by the parent and not by the child, the implication of the new statute is to engage both the parent and the child in the act of responsibly meeting the obligation imposed by the appearance ticket. This action of responsibility is also enforced by the power given the court to issue a summons or warrant against a child and/or parent to appear for the initial appearance (Family Ct Act §§ 312.1, 312.2).

. The appearance ticket’s return date is delineated in Family Court Act § 307.1 (2). "If the charges include a designated felony, the respondent and his parent must appear within 72 hours [excluding Saturdays, Sundays, or *292 legal holidays] * * * [note also that pursuant to section 305.2 (4) an appearance ticket for a designated felony can be issued only if the court is not in session]. When a designated felony is not charged, the respondent must appear within two weeks” (Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 307.1, at 310).

. The Practice Commentary to Family Court Act § 307.2 notes that upon referral of the matter from the probation service, the appropriate presentment agency may "take any action [it] deems appropriate. Examples include the filing of a petition, the commencement of an investigation, or a determination not to proceed” (Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 307.2, at 312).

. The need to secure in personam jurisdiction over the respondent is evident. In Matter of Post (280 App Div 268 [3d Dept 1952]) it was held in a delinquency proceeding that the failure to issue a summons deprived the trial court of jurisdiction over the parties and its order committing the child was therefore not sustainable. The defect in in personam jurisdiction was not waived because although the parents and the child appeared, they made no knowing voluntary appearance, i.e., never consented to the court’s jurisdiction.

. Family Court Act § 312.2 states:
"The court may issue a warrant directing that the respondent personally or other person legally responsible for his care or, if such legally responsible person is not available, a person with whom he resides, be brought before the court, when a petition has been filed and it appears that:
"1. a summons cannot be served; or
*293 "2. such person has refused to obey a summons or family court appearance ticket; or
"3. the respondent or other person is likely to leave the jurisdiction; or
"4. a summons, in the court’s opinion, would be ineffectual; or
"5. a respondent has failed to appear” (emphasis supplied).

. See Matter of Terrence T. (155 Misc 2d 184) for analysis promoting the conclusion that there should be no mandatory per se rule of dismissal for violation of time limitations respecting a dispositional hearing. This analysis represents a jurisprudential approach based on common sense and the premise that article 3 must remain a vital response to advance societal and individual good in the context of juvenile delinquency. However, appellate case law emanating from the formalistic analysis embraced in the majority holding in Matter of Randy K. (77 NY2d 398 [1991], supra) has resulted in the situation that a respondent who has been found guilty of an act which if committed by an adult is a crime, will have the petition dismissed at the dispositional stage provided the respondent absconds, that is acts irresponsibly by failing to appear at the dispositional phase, and the presentment agency and the court fail to observe the ritualistic calendaring of the proceeding every 10 days to continue the outstanding warrant for "good cause” shown (Matter of Faruq F., 186 AD2d 799 [2d Dept 1992]; Matter of Roshon P., 182 AD2d 346 [2d Dept 1992]). A record is made as to "good cause” or "special circumstances” at the time of the issuance of the warrant and at the return on the warrant. To mandate that the proceeding be continually adjourned for 10-day warrant reports in the absence of the *295 respondent is ineffectual in advancing the purpose and policy underlying article 3. For example, this court in another delinquency proceeding (Matter of Maurice T., docket No. D0461/91) issued a warrant for a respondent who had been found guilty of an act which if committed by an adult is the crime of attempted robbery in the third degree (Penal Law §§ 110.00, 165.05), a class E felony. The warrant issued on February 10, 1993 for the wilful nonappearance of the respondent at disposition. To adhere to the jurisprudential approach represented by Matter of Randy K. and its progeny, this court adjourned the matter for warrant reports at discrete 10-day intervals as follows: February 22, 23, March 3, 12, 22, April 1, 14, 23, May 3, 13, 24, June 3, 14, 24, July 6, 16, 27, August 6, 12, 25, September 1, 5 of 1993. On each of these 22 adjourned dates, the presentment agency gave a warrant report on the record and the court granted a "good cause” adjournment for the continuance of the warrant. The cumulative trial time utilized for these purposes amounted to approximately two hours, trial time taken from the concerns of other litigants and in no way advancing the purpose or policy underlying article 3. The proceeding was adjourned to September 23, 1993 for further warrant report when on September 22, 1993, the respondent was returned on the warrant. The return was occasioned by respondent’s arrest and subsequent charge in the adult criminal court for another crime, to wit, criminal possession of a weapon in the third degree (Penal Law § 265.02), a class D felony — a revolver and bullets with spent shells. If this court and the presentment agency fails in observing just one of those 22 adjournments for warrant reports to find "good cause” shown, the appellate courts under the formalistic jurisprudential approach articulated above would mandate dismissal of the juvenile delinquency petition, an absurd result!

. It was noted by the president of the Patrolmen’s Benevolent Association in his letter dated July 25, 1982 to the Executive Chamber (Bill Jacket, L 1982, ch 920) urging adoption of article 3: "we fully understand that juveniles must be treated differently from adults as far as prosecution and incarceration are concerned, but, when a juvenile is threatening the continued safety of innocent victims the criminal justice system and the specialized courts therein must be able to respond lest we fail to protect the rights of the victim with the same vigor we protect the rights of the perpetrator, adult or juvenile”.

. The critical jurisprudential holding implicating the reward of dismissal to a respondent who has acted irresponsibly in failing to appear is Matter of Randy K. (177 NY2d 398 [1991], supra), a four to three decision. The dissent authorized by then Judge, now Chief Judge Kaye, is articulate with the advancement of the purpose underlying article 3. The majority opinion is redolent of a formalistic approach to application of the time limitations in article 3. The footnotes to the majority opinion are elucidating. They emphasize the formalism. No account is made of the irresponsibility of a defaulting respondent under article 3. The lack of account is justified by, in effect, holding that the issuance of a warrant for a defaulting respondent does not toll the time limitations of the different phases of the article 3 proceeding, does not constitute "good cause” or "special circumstances”. The majority opinion states (at 404): "Providing for an automatic retroactive adjournment of unlimited duration based solely upon a failure of a juvenile to appear for a hearing and the issuance of a bench warrant would in no way advance the aim of ensuring a swift and certain determination of the proceeding and supervision of the juvenile”. The rigid formalistic jurisprudential approach of the majority accomplishes this result by enabling wilfully nonappearing respondents to avoid answering to an article 3 petition by securing dismissal of the petition. This is certainly swift but is it justice? The majority opinion portrays a cavalier lack of faith in the presentment agency and indeed in the Family Court, to responsibly carry out their respective obligations to society including society’s children in juvenile delinquency proceedings. The need for protection of the community, one of the mandated considerations under the purpose clause of the statute (Family Ct Act §301.1) is not advanced by refusal to hold a wilfully nonappearing respondent accountable, i.e., responsible. The hubris lies in the refusal to acknowledge responsibility on the part of the juvenile in the equation; in arguing that the refusal to permit warrants to secure the appearance of the wilfully defaulting juvenile to constitute "good cause” or "special circumstances” or to toll the time limitations is not a form of legislating while viewing the contrary as a form of legislating. To this court, seeking to advance the purpose of article 3 at the trial level, the jurisprudential philosophy underlying the majority holding renders hollow the concern expressed for an overworked Family Court system (at 404).
The key to the majority holding in Matter of Randy K. (supra) is its view that the respondent is not rewarded for having chosen voluntarily not to appear, but that the statute was not rigidly complied with, which prompts the dismissal. Of course, the dismissal "rewards” the wilfully defaulting respondent. Of course rigid compliance with the statute where the respondent has acted irresponsibly by wilfully not appearing is meaningless.
Without the person of the respondent being before the court, the purpose *300 of article 3 cannot be achieved. It is the act of the wilfully nonappearing respondent which renders the purpose not capable of achievement. It is not the act of the court. It is not the act of the presentment agency. It is the act of the respondent. The Legislature built elasticity into the statute with "good cause”; "special circumstances”. Case law built elasticity into the statute with concepts such as "tolling”. With one stroke, elasticity is removed by the majority holding in Randy K. (supra). Article 3 thereby loses it vibrancy and becomes a hollow shell, at least insofar as wilfully nonappearing respondents are concerned. The common sense of the dissent in Randy K. is rendered impotent by the majority’s invocation of the "letter of the law”. Unacknowledged by this formalistic jurisprudential approach is the wisdom of the biblical passage — "not of the letter, but the spirit: for the letter killeth, but the spirit giveth life” (2 Corinthians 3:6).
Thus Matter of Randy K. (supra) becomes the grandparent of Matter of Robert S. (supra). Ironically, the respondent who acts responsibly by responding to the Family Court appearance ticket and attending scheduled court proceedings does not receive the benefit of the formalistic jurisprudential approach delineated by the holdings in Matter of Randy K. (supra), Matter of Robert S. (supra), Matter of Faruq F. (186 AD2d 799 [2d Dept 1992], supra), Matter of Roshon P. (182 AD2d 346 [2d Dept 1992], supra) and Matter of Jose R. (194 AD2d 310 [1st Dept 1993]). While these holdings on occasion acknowledge the overburdened Trial Calendars of the Family Court, there is no hesitancy in further burdening those calendars by imposition of this formalistic approach. For example, it is this trial court’s experience that warrant reports given by the presentment agency every 10 days where respondents have absconded at the dispositional phase of the article 3 proceeding are, in the cumulative, imposing a real time burden depriving other litigants and their pressing concerns of that valuable trial time. These warrant reports invariably demonstrate that the presentment agency is doing what is reasonable, not extraordinary, in procuring the return of the respondent. Since the respondent is not before the court, the warrant continues, another 10-day adjournment for further report occurs, and the proceeding remains in stasis. If the presentment agency fails to request the 10-day adjournment and/or the court fails to schedule such adjournment, the respondent, who has already been found guilty of an act which if committed by an adult is a crime, receives the "reward” of dismissal of the petition for his wilful nonappearance. Such is the judicial interpretation of the legislative will mandated by this formalistic jurisprudential approach. In the name of expediency, of swift adjudication, there is no service offered to the child, there is no accountability requested of the child for the child’s irresponsibility, there is no concern for the protection of the community. This is not due process it is abnegation.